[Civ. No. 36851. First Dist., Div. Four. Aug. 6, 1976.]

PETER W., Plaintiff and Appellant, v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Susanne Martinez and Peter B. Sandmann for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, and Burk E. Delventhal, Deputy City Attorney, for Defendants and Respondents.

## Opinion

RATTIGAN, J.—The novel—and troublesome—question on this appeal is whether a person who claims to have been inadequately educated, while a student in a public school system, may state a cause of action in tort against the public authorities who operate and administer the system. We hold that he may not.

The appeal reaches us upon plaintiff's first amended complaint (hereinafter the "complaint"), which purports to state seven causes of action. Respondents (San Francisco Unified School District, its superintendent of schools, its governing board, and the individual board members) appeared to it by filing general demurrers to all seven counts; we hereinafter refer to them as "defendants." The trial court sustained their demurrers with 20 days' leave to amend. When plaintiff failed to amend within that period, the court entered a judgment dismissing his action.

On plaintiff's appeal, which is from the judgment, the question is whether a cause of action is stated against defendants in any of the complaint's seven counts. (*Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357].) ■ We must treat the demurrers as having provisionally admitted all material facts properly pleaded in it (*ibid.*), but not such allegations—which appear throughout it—as amount to " 'contentions, deductions, or conclusions of fact or law.' " (*Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 122 [99 Cal.Rptr. 350].) We limit our summary of its contents accordingly.

### The First Cause of Action

The first count, which is the prototype of the others (each of which incorporates all of its allegations by reference), sounds in negligence. Its opening allegations may be summarized, and quoted in part, as follows:

Defendant district is "a unified school district . . . existing under the laws of the State of California" and functioning under the direction of its governing board and superintendent of schools. Plaintiff is an 18-year-old male who was recently graduated from a high school operated by the district. He had theretofore been enrolled in its schools, and had attended them, for a period of 12 years. Allegations explicitly charging negligence next appear, as follows:

"XI. Defendant school district, its agents and employees, negligently and carelessly failed to provide plaintiff with adequate instruction, guidance, counseling and/or supervision in basic academic skills such as reading and writing, although said school district had the authority, responsibility and ability . . . [to do so] . . . . Defendant school district, its agents and employees, negligently failed to use reasonable care in the discharge of its duties to provide plaintiff with adequate instruction . . . in basic academic skills[,] and failed to exercise that degree of professional skill required of an ordinary prudent educator under the same circumstances[,] as exemplified, but not limited to[,] the following acts:"

In five enumerated subsections which follow in the same paragraph ("XI."), plaintiff alleges that the school district and its agents and employees, "negligently and carelessly" in each instance, (1) failed to apprehend his reading disabilities, (2) assigned him to classes in which he could not read "the books and other materials," (3) allowed him "to pass and advance from a course or grade level" with knowledge that he had not achieved either its completion or the skills "necessary for him to succeed or benefit from subsequent courses," (4) assigned him to classes in which the instructors were unqualified or which were not "geared" to his reading level, and (5) permitted him to graduate from high school although he was "unable to read above the eighth grade level, as required by Education Code section 8573, . . . thereby depriving him of additional instruction in reading and other academic skills."

The first count continues with allegations of proximate cause and injury: "XII. . . . [A]s a direct and proximate result of the negligent acts and omissions by the defendant school district, its agents and employees, plaintiff graduated from high school with a reading ability of only the fifth grade [sic]. As a further proximate result . . . [thereof] . . . , plaintiff has suffered a loss of earning capacity by his limited ability to read and write and is unqualified for any employment other than . . . labor which requires little or no ability to read or write. . . ."

In the closing paragraphs of the first count, plaintiff alleges general damages based upon his "permanent disability and inability to gain meaningful employment"; special damages incurred as the cost of compensatory tutoring allegedly required by reason of the "negligence, acts and omissions of defendants"; that he had presented to the school district an appropriate and timely claim for such damages; and that the claim had been rejected in its entirety.

We proceed to assess the first count for the cause of action in negligence which it purports to plead; the others are separately treated below. In his own assessment of the count, plaintiff initially points out that the doctrine of governmental immunity from tort liability was abolished in *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]; that *Muskopf* further established that governmental liability for negligence is the rule, and immunity the exception; that, as to the conduct pleaded in his first count, immunity from liability is not expressly granted by any provision of the 1963 Tort Claims Act which succeeded *Muskopf* (Gov. Code, § 810 et seq.); and that, in fact, one provision thereof makes defendant district vicariously liable for any tortious conduct of its employees which would give rise to a cause of action against them personally. (Gov. Code, § 815.2, subd. (a).)[1]

The thrust of these observations is that defendants do not have statutory immunity from the negligence liability with which the first count would charge them. However, *Muskopf* holds that liability is the rule, and immunity the exception, only *"when there is negligence."* (*Muskopf* v. *Corning Hospital Dist., supra,* 55 Cal.2d 211 at p. 219 [italics added].) The 1963 Tort Claims Act did not change this "basic teaching." (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352].) Since its enactment, all governmental liability in California has been dependent upon its provisions. (Gov. Code, § 815; *Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803, 808 [75 Cal.Rptr. 240].) ▪ This means that, to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity. (*Susman* v. *City of Los Angeles, supra,* at p. 809.)

A public entity may be held vicariously liable for the conduct of its employee, under Government Code section 815.2, subdivision (a) (see fn. 1, *ante*), only if it is established that the employee would be personally liable for the conduct upon some "acceptable theory of liability." (Van Alstyne, Cal. Government Tort Liability (Cont. Ed. Bar 1964) § 5.33, p. 144.) Plaintiff's immunity points thus mean that he *may* state a cause of action for negligence. They do not mean that he *has* stated one, nor do they relieve him of the pleading requirements he must meet for this purpose.

[1] "815.2.  (a)  A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against the employee or his personal representative."

■ According to the familiar California formula, the allegations requisite to a cause of action for negligence are (1) facts showing a duty of care in the defendant, (2) negligence constituting a breach of the duty, and (3) injury to the plaintiff as a proximate result. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 450, p. 2103.) The present parties do not debate the adequacy of plaintiff's first count with respect to the elements of negligence, proximate cause, and injury; they focus exclusively upon the issue (which we find dispositive, as will appear) of whether it alleges facts sufficient to show that defendants owed him a "duty of care."

The facts which it shows in this respect—or not—appear in its allegations that he had been a student undergoing academic instruction in the public school system operated and administered by defendants. He argues that these facts alone show the requisite "duty of care" upon three judicially recognized theories, for which he cites authorities, pertaining to the public schools.

According to the first theory, "[a]ssumption of the function of instruction of students imposes the duty to exercise reasonable care in its discharge." (Summarizing this and the other two theories advanced by plaintiff, we quote the pertinent captions of his opening brief.) The decisions he cites for his first theory have no application here; in each, the question was whether a public employee's discharge of a function, the performance of which he had "assumed" in the exercise of his discretion, was reached by statutes which granted him immunity from tort liability for the results of his discretionary actions. (*Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938, 940-943 [41 Cal.Rptr. 508]; *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281, 283-285 [57 Cal.Rptr. 312]. See also *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252, 258-262 [74 Cal.Rptr. 389, 449 P.2d 453].)

Plaintiff's second theory is that "[t]here is a special relationship between students and teachers which supports [the teachers'] duty to exercise reasonable care." He cites for this theory a wide-ranged array of decisions which enforced or addressed various "rights," "opportunities," or privileges of public school students (particularly in equal protection contexts), but none of which involved the question whether the school authorities owed them a "duty of care" in the process of their academic education. (See, e.g., *Lau* v. *Nichols* (1973) 414 U.S. 563, 564-568 [39 L.Ed.2d 1, 3-6, 94 S.Ct. 786]; *Ward* v. *Flood* (1874) 48 Cal. 36, 50-51; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 606-607 [96 Cal.Rptr. 601, 487 P.2d

1241]; *Governing Board* v. *Metcalf* (1974) 36 Cal.App.3d 546, 550 [111 Cal.Rptr. 724].) The third theory is that the "[d]uty of teachers to exercise reasonable care in instruction and supervision of students is recognized in California." The decisions cited here are inapplicable because they establish only that public school authorities have a duty to exercise reasonable care for the *physical safety* of students under their supervision. (See, e.g., *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 745-747 [87 Cal.Rptr. 376, 470 P.2d 360].)

■ For want of relevant authority in each instance, plaintiff's allegations of his enrollment and attendance at defendants' schools do not plead the requisite "duty of care," relative to his academic instruction, upon any of the three theories he invokes. Of course, no reasonable observer would be heard to say that these facts did not impose upon defendants a "duty of care" within any common meaning of the term; given the commanding importance of public education in society, we state a truism in remarking that the public authorities who are dutybound to educate are also bound to do it with "care." But the truism does not answer the present inquiry, in which "duty of care" is not a term of common parlance; it is instead a legalistic concept of "duty" which will sustain liability for negligence in its breach, and it must be analyzed in that light.

The concept reflects the longstanding language of decisions in which the existence of a "duty of care," in a defendant, has been repeatedly defined as a requisite element of his liability for negligence. (See, e.g., *Means* v. *Southern California Ry. Co.* (1904) 144 Cal. 473, 478 [77 P. 1001]; *Dahms* v. *General Elevator Co.* (1932) 214 Cal. 733, 737 [7 P.2d 1013]; *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 63 [271 P.2d 23]; *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 6 [31 Cal.Rptr. 847]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 488, p. 2749.) The concept has not been treated as immutable; with respect to physical injury resulting from emotional "spectator" shock, for example, it now incorporates a test—the foreseeability of the injury—which it had previously excluded. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 730, 733-735 [69 Cal.Rptr. 72, 441 P. 912, 29 A.L.R.3d 1316] [overruling *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 310 et seq. (29 Cal.Rptr. 33, 379 P.2d 513)]. See *Mobaldi* v. *Board of Regents* (1976) 55 Cal.App.3d 573, 576, 579-581 [127 Cal.Rptr. 720]; 4 Witkin, *op. cit. supra,* Torts, § 494, p. 2759.)

▮ Despite such changes in the concept, several constants are apparent from its evolution. One is that the concept itself is still an essential factor in any assessment of liability for negligence. (See, e.g., *United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770]; *Valdez* v. *J. D. Diffenbaugh Co.* (1975) 51 Cal.App.3d 494, 504 [124 Cal.Rptr. 467].) Another is that whether a defendant owes the requisite "duty of care," in a given factual situation, presents a question of law which is to be determined by the courts alone. (*Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d 1 at p. 8; 4 Witkin, *op. cit. supra,* Torts, § 493, p. 2756.) A third, and the one most important in the present case, is that judicial recognition of such duty in the defendant, with the consequence of his liability in negligence for its breach, is initially to be dictated or precluded by considerations of public policy. From among an array of judicial statements to this effect, the following language by the *Raymond* court is particularly pertinent here: "An affirmative declaration of duty [of care] simply amounts to a statement that two parties stand in such relationship that the law will impose on one a responsibility for the exercise of care toward the other. Inherent in this simple description are various and sometimes delicate *policy judgments.* The social utility of the activity out of which the injury arises, compared with the risks involved in its conduct; the kind of person with whom the actor is dealing; the workability of a rule of care, especially in terms of the parties' relative ability to adopt practical means of preventing injury; the relative ability of the parties to bear the financial burden of injury and the availability of means by which the loss may be shifted or spread; the body of statutes and judicial precedents which color the parties' relationship; the prophylactic effect of a rule of liability; in the case of a public agency defendant, the extent of its powers, the role imposed upon it by law and the limitations imposed upon it by budget; and finally, the moral imperatives which judges share with their fellow citizens—such are the factors which play a role in the determination of duty. [Citations.] Occasions for judicial determination of a duty of care are infrequent, because in 'run of the mill' accident cases the existence of a duty may be—and usually is—safely assumed. Here the problem is squarely presented." (*Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d 1 at pp. 8-9 [italics added].)

In *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the Supreme Court used similar terminology in defining various public policy considerations as exceptional factors which might alone warrant *non*liability for negligence. The court

declared that the foundation of *all* negligence liability in this state was Civil Code section 1714,[2] paraphrased the section in terms of duty of care (as expressing the principle that "[a]ll persons are required to use ordinary care to prevent others being injured as the result of their conduct"), and stated that liability was to flow from this "fundamental principle" in all cases except where a departure from it was *"clearly supported by public policy."* (*Id.,* at p. 112 [italics added].) The court then described the pertinent factors of public policy, and their role, as follows:

"A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Rowland* v. *Christian, supra,* 69 Cal.2d 108 at pp. 112-113. See 4 Witkin, *op. cit. supra,* Torts, § 487, pp. 2748-2749.)

Such policy factors, and their controlling role in the determination whether a defendant owes a "duty of care" which will underlie his liability for negligence in its breach, have been similarly defined in other decisions. (See, e.g., *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 865 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224] and cases cited; *Valdez* v. *J. D. Diffenbaugh Co., supra,* 51 Cal.App.3d 494 at p. 507. See also Prosser, Law of Torts (4th ed. 1971) pp. 21-23.) Some have been classified as "administrative factors" which involve such considerations as the possibility of "feigned claims," and the difficulty of proof, of a particular injury; others, as "socio-economic and moral factors" involving the prospect of limitless liability for the same injury. (See *Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d 295 at pp. 310-315 [applying the factors to negate "duty"]; compare *Dillon* v. *Legg, supra,* 68 Cal.2d 728 at pp. 735-746 [acknowledging the factors but disregarding them as limitations upon liability].)

It has also been pointed out that the concept of "duty" may actually focus upon the rights of the injured plaintiff rather than upon the

---

[2]Section 1714 provides in pertinent part: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person . . . ."

obligations of the defendant, but that the same public policy considerations will control whether the one may state a cause of action for negligence, against the other, in a given factual situation. In these respects, the Supreme Court has stated:

"The assertion that liability must nevertheless be denied because defendant bears no 'duty' to plaintiff 'begs the essential question— whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. . . . It ·[duty] is a shorthand statement of a conclusion, rather than an aid to analysis in itself. . . . But it should be recognized that "duty" is not sacrosanct in itself, but only an expression of *the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' "*[3] (*Dillon* v. *Legg, supra,* 68 Cal.2d 728 at p. 734, quoting from Prosser, Law of Torts (3d ed. 1964) pp. 332-333 [italics added here]. See also Prosser, *op. cit.* (4th ed. 1971) pp. 325-326.)

On occasions when the Supreme Court has opened or sanctioned new areas of tort liability, it has noted that the wrongs and injuries involved were both comprehensible and assessable within the existing judicial framework. (See, e.g., *State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330, 338 [240 P.2d 282]; *Dillon* v. *Legg, supra,* 68 Cal.2d 728 at pp. 735-747.) This is simply not true of wrongful conduct and injuries allegedly involved in educational malfeasance. Unlike the activity of the highway or the marketplace, classroom methodology affords no readily acceptable standards of care, or cause, or injury. The science of pedagogy itself is fraught with different and conflicting theories of how or what a child should be taught, and any layman might—and commonly does—have his own emphatic views on the subject. The "injury" claimed here is plaintiff's inability to read and write. Substantial professional authority attests that the achievement of literacy in the schools, or its failure, are influenced by a host of factors which affect the pupil subjectively, from outside the formal teaching process, and beyond the control of its ministers. They may be physical, neurological, emotional, cultural, environmental; they may be present but not perceived, recognized but not identified.[4]

---

[3]"Protection" of the plaintiff is the initial element in the Restatement formula defining the requisites of a cause of action for negligence. The formula's essentials include negligence, causation, and injury (the "invasion of an interest" of the plaintiff) but, unlike the California formula, the first element is not a "duty of care" in the defendant: it is the condition that the *"interest invaded* is *protected."* (Rest.2d Torts, § 281 [italics added].)

[4]From among innumerable authorities to these effects, defendants cite Gagne, Conditions of Learning (1965); Schubert & Torgerson, Improving The Reading Program (1968); Flesch, Why Johnny Can't Read (1965).

■ We find in this situation no conceivable "workability of a rule of care" against which defendants' alleged conduct may be measured (*Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d 1 at p. 8), no reasonable "degree of certainty that . . . plaintiff suffered injury" within the meaning of the law of negligence (see fn. 3, *ante,* referring to Rest.2d Torts, § 281), and no such perceptible "connection between the defendant's conduct and the injury suffered," as alleged, which would establish a causal link between them within the same meaning. (*Rowland* v. *Christian, supra,* 69 Cal.2d 108 at p. 113.)

These recognized policy considerations alone negate an actionable "duty of care" in persons and agencies who administer the academic phases of the public educational process. Others, which are even more important in practical terms, command the same result. Few of our institutions, if any, have aroused the controversies, or incurred the public dissatisfaction, which have attended the operation of the public schools during the last few decades. Rightly or wrongly, but widely, they are charged with outright failure in the achievement of their educational objectives; according to some critics, they bear responsibility for many of the social and moral problems of our society at large. Their public plight in these respects is attested in the daily media, in bitter governing board elections, in wholesale rejections of school bond proposals, and in survey upon survey. To hold them to an actionable "duty of care," in the discharge of their academic functions, would expose them to the tort claims—real or imagined—of disaffected students and parents in countless numbers. They are already beset by social and financial problems which have gone to major litigation, but for which no permanent solution has yet appeared. (See, e.g., *Crawford* v. *Board of Education* (1976) 17 Cal.3d 280 [130 Cal.Rptr. 724, 551 P.2d 28]; *Serrano* v. *Priest, supra,* 5 Cal.3d 584.) The ultimate consequences, in terms of public time and money, would burden them—and society—beyond calculation.

Upon consideration of the role imposed upon the public schools by law and the limitations imposed upon them by their publicly supported budgets (*Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d 1 at p. 8), and of the just-cited "consequences to the community of imposing [upon them] a duty to exercise care with resulting liability for breach" (*Rowland* v. *Christian, supra,* 69 Cal.2d 108 at p. 118), we find no such "duty" in the first count of plaintiff's complaint. As this conclusion is dispositive, other problems presented by the pleading need not be discussed: it states no cause of action.

## *The Last Five Causes of Action*

In each of his last five counts (the third through the seventh, inclusive), plaintiff repleads all the allegations of the first one. He further alleges, in each, that he had incurred "the damages alleged herein" "as a direct and proximate result" of a specified violation, by one or more of the defendants and as to him, of a respectively described "duty" (or "mandatory duty") allegedly imposed upon them by an express provision of law.[5] The theory of each count is that it states a cause of action for breach of a "mandatory duty" under Government Code section 815.6.[6]

■ If it be assumed that each of these counts effectively pleads the district's failure to have exercised "reasonable diligence to discharge the duty" respectively alleged, as mentioned in the statute (see fn. 6, *ante*), none states a cause of action. This is because the statute imposes liability for failure to discharge only such "mandatory duty" as is "imposed by an enactment that is designed to protect against the risk of a particular kind of injury." (See *ibid.*) The various "enactments" cited in these counts (see fn. 5, *ante*) are not so "designed." We have already seen that the failure of educational achievement may not be characterized as an "injury" within the meaning of tort law. It further appears that the several "enactments" have been conceived as provisions directed to the attainment of optimum educational results, but not as safeguards against "injury" of any kind: i.e., as administrative but not protective. Their

[5]The third count thus refers to the district's and the governing board's having violated their "mandatory duty," allegedly imposed upon them by Education Code section 10759 and title 5 of the California Administrative Code, "of keeping the parents and natural guardians of minor school children advised as to their accurate educational progress and achievements." The fourth count alleges a violation, by the district, of its "duty of instructing plaintiff, and other students, in the basic skills of reading and writing" as imposed "under the Constitution and laws of the State of California." The fifth count refers to the district's having graduated plaintiff from high school as a violation of a "mandatory duty not to graduate students from high school without demonstration of proficiency in basic skills" as allegedly imposed by Education Code section 8573 et seq. The sixth count speaks to a violation, by the governing board, of its "mandatory duty" to inspect and evaluate the district's educational program pursuant to Education Code sections 1053 and 8002; the seventh, to the district's violation of its "mandatory duty," allegedly imposed by Education Code section 8505, "to design the course of instruction offered in the public schools to meet the needs of the pupils for which the course of study is prescribed."

[6]"815.6. Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

violation accordingly imposes no liability under Government Code section 815.6.

### The Second Cause of Action

Plaintiff's second count requires separate treatment because the theory of liability invoked in it is materially different from those reflected in the others. After incorporating into it all the allegations of the first count, he further alleges as follows:

"Defendant school district, its agents and employees, falsely and fraudulently represented to plaintiff's mother and natural guardian that plaintiff was performing at or near grade level in basic academic skills such as reading and writing . . . ." The representations were false. The charged defendants knew that they were false, or had no basis for believing them to be true. "As a direct and proximate result of the intentional or negligent misrepresentation made . . . , plaintiff suffered the damages set forth herein."

■ For the public policy reasons heretofore stated with respect to plaintiff's first count, we hold that this one states no cause of action for *negligence* in the form of the "misrepresentation" alleged. The possibility of its stating a cause of action for *intentional* misrepresentation, to which it expressly refers in the alternative, is assisted by judicial limitations placed upon the scope of the governmental immunity which is granted, as to liability for "misrepresentation," by Government Code section 818.8. (See *Johnson* v. *State of California, supra,* 69 Cal.2d 782 at pp. 799-800; *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 752 [84 Cal.Rptr. 257] See also Gov. Code, § 822.2.)

The second count nevertheless does not state a cause of action, for intentional misrepresentation, because it alleges no facts showing the requisite element of *reliance* upon the "misrepresentation" it asserts. (See 3 Witkin, Cal. Procedure, *op. cit. supra,* Pleading, §§ 573-574, pp. 2210-2212.) Plaintiff elected to stand upon it without exercising his leave to amend. The trial court's action, in sustaining defendant's general demurrer to it, is therefore to be regarded as conclusive for our purposes.

(*O'Hara* v. *L. A. County Flood etc. Dist.* (1941) 19 Cal.2d 61, 64 [119 P.2d 23]; *Susman* v. *City of Los Angeles, supra,* 269 Cal.App.2d 803 at p. 822.)

The judgment of dismissal is affirmed.

Caldecott, P. J., and Christian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 29, 1976.